[Civ. No. 8238. First Appellate District, Division Two.—February 4, 1932.]

JAMES E. TOMB, Plaintiff, v. MAUD L. TOMB, Defendant.

CITIZENS NATIONAL TRUST & SAVINGS BANK, Special Administrator, etc., et al., Appellants, v. MAUD L. TOMB, Respondent.

Thomas V. Cassidy, Cooper & Collings and Newton J. Kendall for Appellants.

Janeway, Beach & Pratt and S. T. Hankey for Respondent.

JAMISON, J., *pro tem.*—This is an appeal from the order of the court setting aside and vacating an interlocutory and final decree of divorce alleged to have been fraudulently obtained.

The facts briefly stated are as follows:

On May 8, 1923, James E. Tomb filed an action for divorce against his wife, the defendant. On May 11, 1923, defendant filed her answer denying the material allegations of the complaint which answer was, by stipulation of the parties, withdrawn on May 31, 1923. On said last-named date a property settlement was made by the said Tomb and wife. By

this settlement the separate property of each was to remain the property of each of them, and the community property consisting of household furniture was equally divided between them. It was also agreed therein that the said Tomb would pay his said wife the sum of $2,400 in installments of $75 per month for the first eleven months and thereafter $100 per month until said sum of $2,400 was paid in full.

The said husband, James E. Tomb, died on July 24, 1929, leaving an estate valued at $16,000. On August 16, 1929, respondent filed a motion to set aside and vacate the interlocutory decree of divorce made and entered on June 28, 1923, and the final decree of divorce entered on July 7, 1924. A hearing was had on said motion on August 29, 1929, and upon this hearing the court made its order vacating and setting aside the said final decree of divorce.

Respondent produced evidence as said hearing in substance as follows: That she and the said Tomb were married in 1917 and thereafter continued to live together as husband and wife until about the 8th of May, 1923; that during this period they were living in the city of Vernon, California, where the said Tomb was in the employment of the Woodward-Bennett Packing Company in the capacity of livestock buyer and official livestock weigher. That when said Tomb brought the said action for divorce against respondent she moved to Huntington Park, California. That about the first of June, 1923, her husband came to her home in Huntington Park and told her he had made a mistake in bringing the divorce action and that he wanted to forget the matter and again live with respondent. That she consented and thereafter she and the said Tomb continued to live together as husband and wife until his death.

That he occupied the same room and bed with respondent when the duties of his employment permitted, which was about half of the time. He registered her at hotels as his wife and introduced her to friends as his wife. That on one occasion about the last of June or the first of July, 1923, the said Tomb stated in the presence of C. L. Safstrom, Grace Safstrom and respondent that he and respondent had made up their differences and were reconciled and the divorce action had been abandoned. That said Tomb told respondent that he would not be able to spend all of his nights at home, as the duties of his employment required him to re-

main at his place of business in said city of Vernon at times. That respondent did not know that her said husband had obtained a decree of divorce from her until after his death and that he died at their home in Huntington Park.

The appellants contend that the evidence is insufficient to sustain the order made, in that it does not show that any fraud was perpetrated upon respondent and that she did not have due notice, etc. ▓ It is a well-recognized principle that a court of general jurisdiction has the inherent power to set aside a judgment obtained through fraud practiced upon the court. (*McKeever* v. *Superior Court,* 85 Cal. App. 381 [259 Pac. 373]; *McGuinness* v. *Superior Court,* 196 Cal. 222 [40 A. L. R. 1110, 237 Pac. 42, 45].)

If the fraud is intrinsic and the time for appeal has expired then the party seeking relief from such intrinsic fraud must, under the provisions of section 473 of the Code of Civil Procedure, make application for such relief within six months after judgment. But if the fraud is extrinsic this limitation does not apply.

▓ Conceding that the evidence produced upon the part of respondent is true, then in that event there was no adversary proceedings attending or embracing the action of the court in the divorce action at the time of the application for and entry of the interlocutory or final decree.

As was said in the case of *McGuinness* v. *Superior Court,* *supra*: "In the instant case the wife not only had no knowledge of her husband's action in seeking and obtaining the entry of such final decree and hence no opportunity to appear and resist such action, but by the reconciliation and resumption of marital relations between herself and her husband and by long years of cohabitation she had apparently been led to regard the divorce proceedings between them as obliterated and their marital union as completely restored. That her husband having resumed and while occupying these relations toward her should have covertly sought the divorce court, *ex parte,* and without any notice or knowledge imparted to her, have there caused to be entered a decree of final divorce apparently in her favor, but which would have the effect of rendering the relations between himself and his former wife meretricious was, upon the face of the showing thus far made in this proceeding, a fraud of the most despicable quality and was a fraud which was essentially

extrinsic in character since it was such a fraud as she had no opportunity to combat or protect herself against in the proceeding by which *ex parte* and through an imposition practiced upon the court he obtained the entry of said final decree. It was also extrinsic fraud in so far as the court itself granting such decree was concerned since it was effected through concealment from the court in an *ex parte* proceeding of facts which the defendant in said action was bound to disclose and which if disclosed would have rendered improper the granting and impossible the procurement of such final decree.''

It is true that there is a conflict in the evidence regarding this question of fraud, but as was said in the case of *Aldrich* v. *Aldrich,* 203 Cal. 433 [264 Pac. 754, 755], ''if there is a substantial conflict in the facts presented by the affidavits the determination of the controverted facts by the trial court will not be disturbed''. And in this same case the court also said, ''Furthermore, the law does not favor default judgments in divorce actions and courts are always alert to detect and correct fraud.''

We are of the opinion that there is substantial evidence to support the order of the trial court in setting aside and vacating the said interlocutory and final decrees of divorce. ▇ Appellants contends that there was a property settlement between respondent and her said ·husband which is binding upon her, and that she would not receive any benefit from the relief she seeks in this proceedings. However, in the case of *McGuinness* v. *Superior Court, supra,* the Supreme Court held that even though no property rights were involved, the court had jurisdiction to set aside a divorce decree after the death of the husband. And in *Rehfuss* v. *Rehfuss,* 169 Cal. 86 [145 Pac. 1020, 1022], the court declares ''where it becomes manifest to the court before it loses jurisdiction of the case, that a judgment decreeing a divorce has been obtained by collusive agreement between the parties, or through fraud practiced upon the court, the court has the inherent power to set aside the judgment. This it may do on its own motion.''

In the case now under consideration the court had jurisdiction to set aside the interlocutory and final decrees, being satisfied that they were obtained through fraud practiced by the husband. And this regardless of whether or not

there had been a property settlement between the parties. The fraud alleged in the motion to set aside the interlocutory and final decrees, is that the husband by the said reconciliation led respondent to believe that no further proceedings would be taken in the divorce action, and then took advantage of that situation and without the knowledge of respondent and without informing the court that there had been a reconciliation between him and his wife secured first the interlocutory decree and thereafter secured the final decree.

The said reconciliation took place, according to the evidence of respondent, about the first of June, 1923. The interlocutory decree was rendered on June 21, 1923, without notice to, or knowledge thereof on the part of respondent and the final decree was made and entered on the motion of the husband, on July 7, 1924, without the knowledge or consent of respondent.

As the property settlement was made prior to the reconciliation and was not approved by the court, nor incorporated in the interlocutory or final decree, it is an independent contract altering therein legal relations as to property within the terms of section 159 of the Civil Code, and is not open to attack on a mere motion to set aside the decree.

Any inquiry relating to property rights could arise only in a proceeding for that purpose in which those claiming an interest in that property must be made parties.

The order vacating and setting aside the decree of final divorce is affirmed.

Nourse, P. J., and Spence, J., concurred.